**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

VESELINKA DIMCEVSKA,

      Plaintiff,

v.                                                    Civil No. 05-CV-10244-BC

COMMISSIONER OF                DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,                   MAGISTRATE JUDGE CHARLES E. BINDER

      Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.**     **RECOMMENDATION**

      In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that Plaintiff is not disabled.   Accordingly, IT IS RECOMMENDED that PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE DENIED, that the FINDINGS OF THE COMMISSIONER BE REVERSED, and the case REMANDED for an award of benefits.

**II.**     **REPORT**

     **A.**    **Introduction and Procedural History**

      Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case has been referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

insurance benefits.  This matter is currently before the Court on cross motions for summary judgment.

Plaintiff was 52 years of age at the time of the most recent administrative hearing and has completed a high school education and two years of college.  (Tr. at 504.)  Plaintiff's relevant work history included 15 years of work in a bank, and 8 years of work on an assembly line in a factory.  (Tr. at 57, 505-06.)

Plaintiff filed the instant claim on May 21, 2003, alleging that she became unable to work on May 31, 2002.  (Tr. at 42.)  The claim was denied initially.  (Tr. at 30.)  In denying Plaintiff's claim, the Defendant Commissioner considered degenerative changes in the AC joint and mild disc space narrowing as possible bases of disability.  (*Id.*)

On December 20, 2004, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Alfred Varga, who considered the case *de novo*.  In a decision dated April 18, 2005, the ALJ found that Plaintiff was not disabled.  (Tr. at 12-20.)  Plaintiff requested a review of this decision on May 6, 2005.  (Tr. at 9.)

The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-1-2, Tr. at 489-500), the Appeals Council, on August 10, 2005, denied Plaintiff's request for review.  (Tr. at 5-7.)  On September 15, 2005, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B.    Standard of Review

---

[1]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts relevant to an application for disability benefits. A federal court "may not try the case de novo, . . . ." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir.1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write

to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

### C.      Governing Law

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those

individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

A claimant must meet all five parts of the test set forth in 20 C.F.R. § 404.1520 in order to receive disability benefits from Social Security. The test is as follows:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.

> Step Three: If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.

> Step Four: If the claimant is able to perform his or her previous work, benefits are denied without further analysis.

> Step Five: If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 687-88 (6th Cir. 1985). "The burden of proof is on the claimant

throughout the first four steps of this process to prove that he is disabled." *Preslar*, 14 F.3d at 1110. "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Id.* "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ." *Id.*

### D.     Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was seen by Dr. Bernardo Rojas on May 13, 1999, for complaints of chest pain and neck pain with radiation to the shoulders, especially the left, with numbness of the left hand. She also had complaints of generalized malaise, sore throat, low grade fever, stuffy nose, and headaches. Plaintiff, however, denied any symptoms of angina or shortness of breath, or any symptoms suggestive of stroke. After examination, Plaintiff was diagnosed with upper respiratory infection, hypertension and cervical osteoarthritis. Dr. Rojas prescribed medications, a cervical spine x-ray, and a return visit. (Tr. at 320-21.)

Plaintiff returned to Dr. Rojas on June 2, 1999, with complaints of headaches, stuffy nose and congestion. Physical examination revealed blood pressure of 130/80, normal sinus rhythm, and no edema. Plaintiff was assessed with migraine headache, cervical spine arthritis with disc disease, and allergic rhinitis. Plaintiff was administered medication for the headache and prescribed other medications with instructions to return in a month. (Tr. at 319.)

Plaintiff had a follow-up examination on August 31, 1999, at which time she reported that she had no symptoms of angina, chest pain, headaches, dizziness, or numbness. The doctor reported that Plaintiff's hypertension was well controlled, and she had no signs of edema. The doctor diagnosed arterial hypertension and osteoarthritis of the cervical spine. Plaintiff was

advised to continue her medications, to have a cervical spine x-ray, and to wear a cervical collar. (Tr. at 317-18.)

An MRI of the cervical spine was conducted on September 26, 1999. The MRI revealed mild bulging of the C3-C4, C4-C5, and C5-C6 discs with no herniation. There was no evidence of cervical spinal canal stenosis.[2] (Tr. at 316.)

On December 30, 1999, Plaintiff was seen by Dr. James Little. Plaintiff complained of chronic shoulder and neck pain. Plaintiff reported that her work required her to do a lot of lifting above the shoulder level which aggravated her symptoms. Examination revealed point tenderness in the cervical or thoracic spine. Plaintiff also demonstrated discomfort throughout the rotator cuff area. Dr. Little diagnosed musculoskeletal pain, rotator cuff strain and mild tendinitis. He prescribed medications. (Tr. at 313.)

Plaintiff had a follow-up examination with Dr. Rojas on January 4, 2000. There was no significant change in Plaintiff's condition, and she was advised to continue the same medical program. (Tr. at 311-12.) Another follow-up examination on October 5, 2000, revealed that Plaintiff complained of worsening of the pain in the right shoulder and difficulty with range of motion of the right shoulder. Some traces of edema were present. The doctor assessed hypertension and arthritis of the cervical spine and right shoulder. (Tr. at 300-01.)

In January 2001, Plaintiff complained of back pain in the lumbar sacral area without radiation. She described it as an achiness and throbbing. She reported that she was not able to do her housework, walk up and down stairs, and that it was exacerbated by lifting, walking and

---

[2]Stenosis is defined as the "abnormal narrowing of a body passage, opening, canal, or duct. It is usually due to an overgrowth or shrinkage of the tissue around it." 5 J. E. SCHMIDT, M.D., ATTORNEYS' DICTIONARY OF MEDICINE S-292.

bending.  Plaintiff's blood pressure remained well controlled.  Range of motion was decreased, and muscle spasms were present.  Medication was prescribed.  (Tr. at 297-98.)

Plaintiff was thereafter regularly seen by Dr. Rojas.  In April 2001, the doctor noted swelling in Plaintiff's right ankle along with the previously described pain in Plaintiff's right shoulder and back.  X-rays of Plaintiff's ankle were normal.  (Tr. at 289.)  In January 2002, the doctor noted continued swelling of the right ankle along with right shoulder pain.  (Tr. at 278.) X-rays of the right shoulder were normal.  (Tr. at 281.)  After an appointment in March 2002, an MRI of Plaintiff's right shoulder was taken.  (Tr. at 277.)  A partial tearing of a ligament, along with other mild degenerative changes, were seen.  Other aspects of the shoulder were normal.  (*Id.*)

An electrocardiogram taken of Plaintiff's heart in  June 2002 was normal.  (Tr. at 274.)  In June 2002, the doctor also reported that in late May 2002 Plaintiff had been involved in an auto accident.  (*See also* Tr. at 91-97.)   On examination, the doctor found no weakness in the extremities.  (Tr. at 267.)  X-rays of the neck and spine were negative for fractures or dislocations. On June 19, 2002, the doctor completed a form on which he stated that Plaintiff was unable to return to work until further notice.  (Tr. at 262.)

By August 2002, the doctor reported that the previous swelling was no longer seen.  (Tr. at 260.)  The doctor also noted that Plaintiff was receiving physical therapy and that her condition had improved as a result.  (Tr. at 259.)  On the same day, the doctor completed a form stating that Plaintiff would be able to return to work in approximately two weeks.  (Tr. at 258.)  Two days later, however, the doctor completed another form on which he stated that Plaintiff was again unable to return to work until further notice.  (Tr. at 255.)

In September 2002, the doctor reported that although Plaintiff continued to suffer back pain, x-rays of the spine were negative.  (Tr. at 251.)  Similarly, the doctor reported that although

Plaintiff suffered pain in the neck and right shoulder, there was no weakness in the right arm or in the grip strength of the right hand. (Tr. at 248.)  The doctor reported that Plaintiff also was receiving injections to the shoulder, as well as pain medications.  Plaintiff denied any side effects from the medications.  Similar findings were made in another examination later the same month. (*Id.*)

In October 2002, the doctor reported that Plaintiff's neck pain had worsened. (Tr. at 245.) The doctor noted that an EMG of Plaintiff's shoulder was negative.  The doctor also noted that the injections to Plaintiff's right shoulder had not brought about any major improvement.  (*Id.*)   The doctor again completed a form stating that Plaintiff was unable to return to work until further notice. (Tr. at  244.)

In October 2002, Dr. Rojas reported that an MRI of Plaintiff's cervical spine showed a small disc protrusion at the C4-C5 level which abutted the spinal canal.  (Tr. at  242.)  The doctor noted some weakness in the right hand grip, but no numbness.  (*Id.*)  The doctor again completed a form stating that plaintiff was unable to return to work until further notice.  (Tr. at 238.)

In late November 2002, the doctor noted that Plaintiff continued to complain of severe neck pain.  Pain medications were not improving her symptoms.  (Tr. at 233.)  The doctor noted that Plaintiff had consulted a surgeon who had given her the option of surgery, but Plaintiff stated that she wished to try physical therapy first.  (Tr. at 229.)  The doctor again noted that the range of motion of Plaintiff's right shoulder was decreased.  (Tr. at 230.)  Similar findings were made in late January 2003.  (Tr. at 225-227.)

In mid- February 2003, the doctor authored a letter in which he stated that "because of the severe pain associated with these problems, [Plaintiff] must rely on the help from her daughter to do most of her daily physical household chores."  (Tr. at  224.)  In April 2003, the doctor noted that

Plaintiff had undergone a cervical rehabilitation program which provided "some temporary improvement." (Tr. at 215.) The doctor again noted Plaintiff's history of a rotator cuff injury to the right shoulder which did not show major improvement after injections. (*Id.*) The doctor stated that Plaintiff may require surgery for the right shoulder in the future. The doctor also noted that Plaintiff's back and neck pain were exacerbated by a prior automobile accident. (*Id.*) The x-rays of Plaintiff's back showed a bulging at the L4-L5 level which did not protrude upon the spinal canal. (Tr. at 218.)

In a letter dated July 5, 2004, Dr. Rojas summarized his course of treatment and his medical opinions as follows:

> Mrs. Dimcevska has been a patient of mine for a few years. She had a history of an automobile accident in 1994 and also in May of 2002. The MVA [motor vehicle accident] on May 31, 2002, happened while she was a restrained passenger in a vehicle which was turning left when it was struck by oncoming traffic on the passenger's rear side. The patient reported striking her forehead. There was no loss of consciousness. She complained of neck pain and back pain since then. There was some tingling sensation of the upper extremities, but there was no weakness. She was seen in the emergency room at Beaumont Hospital in Troy where x-rays of the lumbar and cervical spine were negative for fractures or sublaxation. The patient was then sent home and she came to be evaluated by me on June 5, 2002. The patient had a history of Osteoarthritis of the Cervical Spine, manifested by neck pain with radiation to the right shoulder. She had a cervical spine MRI done, which showed multiple Disc Disease, but mainly in the C5-C6 area. The EMG also shows evidence of C6 radiculopathy. The patient also has history of Osteoarthritis of the Lumbar Spine, manifested by back pain, with radiation to the legs. She was diagnosed to have S-I radiculopathy in the past. This pre-existing condition was aggravated by the results of the auto accident in May of 2002. She had the cervical spine MRI on October 12, 2002, which shows some small disc herniation of the C4-C5 area, which was distorting of the ventral arachnoid sac, and there was some pressure over the ventral surface of the spinal cord as well, which was not present before. She had a cervical spine MRI in 1999, which shows some mild disc bulging on the C3-C4, C4-C5, C5-C6, but no disc herniation. There was also some small protrusion in the C5-C6 area by myelogram. The patient has been having exacerbation of the neck and back pain since the auto accident. The patient received PT and anti-inflammatory drugs and analgesic with no improvement of her symptoms. She was seen by a neurosurgeon and spinal surgeons who recommended surgery to relieve the pain. The patient received Celebrex 200 mg twice a day,

which is anti-inflammatory drugs, Ultram 50 mg, one every four hours prn pain. She received PT and OT with no relief of her symptoms. The patient also sustained some Rotator Cuff Injury to the right shoulder, most likely work-related rather than due to the car accident. The patient is very reluctant to have surgery and I agree with her because as long as there is not any neurological damage, surgery would only be a temporary help. Eventually she will again develop some scar tissue and the neck pain and back pain will return. The patient was then advised that the best course of treatment would be to use anti-inflammatory drugs, analgesic and periodically to have Physical Therapy. Also she was advised to have epidural steroids for temporary relief. All of these mentioned will give her temporary relief of her pain. The patient will have chronic pain which she will probably require treatment all of her life and also because of the neck and back pain and shoulder problems the patient is not able to return to work at Madison Electronics, which she has assembly work which required her to do a lot of lifting and elevation above the level of the shoulder and also pulling a lot of cables.

The patient also needed some help with her housework. She was not able to do her house chores because of the neck pain, back pain, and the shoulder pain.

(Tr. at 480-81.)

At the administrative hearing, a vocational expert (VE) testified. She characterized Plaintiff's prior work as unskilled to semi skilled and light in exertion. (Tr. at 515.) In response to a hypothetical question presuming the veracity of Plaintiff's testimony at the hearing, the VE stated that Plaintiff would be unable to undertake any substantial gainful employment. (Tr. at 516.) In response to a second hypothetical question presuming a person of Plaintiff's circumstances, who could undertake light in exertion jobs requiring the lifting of 10 to 20 pounds, which could be done either sitting or standing, and which involved relatively simple routine tasks, with no lifting above shoulder level, the VE identified 3,100 hand packaging, 3,600 assembly, 1,500 sorting, and 2,900 inspecting jobs consistent with these hypothetical conditions. (Tr. at 517.)

### E.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since May 31, 2002.

(Tr. at 19.)   At step two, the ALJ found that Plaintiff's cervical tenderness, right shoulder tenderness, and complaints of low back pain were "severe" within the meaning of the second sequential step.  (*Id.*)   At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (*Id.*)  At step four, the ALJ found that Plaintiff could not perform her previous work.  (Tr. at 20.)  At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the national economy.  (*Id.*)

Using the Commissioner's grid rules as a guide, the ALJ found that "there are a significant number of jobs in the national economy which she could perform.  Examples of such jobs are: hand packer, assembler, sorter and visual inspector."  (*Id.*)

### F.     Analysis and Conclusions

### 1.     Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of light work.  (*Id.*)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim.  I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

## 2.   Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *Mullen,* 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

On this record, I suggest that Plaintiff's counsel's arguments have merit, and that substantial evidence fails to support the findings of the ALJ.  The ALJ's residual functional capacity finding of light exertion work is thoroughly inconsistent with the objective medical findings of Dr. Rojas, Plaintiff's treating physical therapists, and with the results of x-rays and numerous MRI scans. The ALJ's findings are also inconsistent with the medical opinions expressed by  Dr. Rojas, which in turn are based upon his repeated physical examinations of the Plaintiff over a number of years.

I further suggest that the ALJ's hypothetical questions fail to appropriately summarize the objective medical findings contained in the medical records, as required in this circuit.  *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 481 (6th Cir. 1988); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Once it has been determined that the Commissioner's administrative decisions are not supported by substantial evidence, a district court faces a choice.  It may either remand the case to the Commissioner for further proceedings or direct the Commissioner to award benefits.  In this circuit, the latter option requires that the "proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking[,]" *Mowery v. Heckler* 771 F.2d 966, 973 (6th Cir.

1985); or that "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits[.]" *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Because I conclude that these conditions have been met, I suggest that this case be remanded for an award of benefits.

## III.   **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

 s/ *Charles E Binder*

CHARLES E. BINDER
United States Magistrate Judge

Dated: June 28, 2006

14

**<u>CERTIFICATION</u>**

  I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on James Brunson and Kenneth Laritz, and served in the traditional manner on Honorable David M. Lawson.


Dated: June 28, 2006      By  s/Mary E. Dobbick    
             Secretary to Magistrate Judge Binder